UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LEISURE PASS NORTH AMERICA, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**LEISURE PASS GROUP, LTD.,**<br><br>Defendant. | Civ. No. 2:12-cv-03375 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Leisure Pass North America, LLC brings this breach of contract action against Defendant Leisure Pass Group, Ltd. The Court previously granted Defendant's motion to dismiss a number of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Two motions are now pending in this case. First, Plaintiff moves for reconsideration of the Court's prior decision. Second, Defendant moves for summary judgment on Plaintiff's remaining claims under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion for reconsideration and Defendant's motion for summary judgment are each **DENIED**.

**I.    BACKGROUND**

      The following facts are undisputed. Defendant is a company based in London, England. Defendant developed a product called the "Leisure Pass," a travel card that allows consumers to access various tourist attractions in a city at a discounted rate. Defendant also developed a separate Leisure Pass Operating System ("LPOS"), a software system that is used to manage the Leisure Pass businesses.

      In 2002, Defendant entered into an agreement with Plaintiff, which gave Plaintiff a license to sell Leisure Passes in North America. In a separate agreement, Defendant granted Plaintiff a license to use the LPOS software ("LPOS License Agreement"). In October 2008, the parties entered an additional agreement ("2008 Agreement"). Section 18 of the 2008 Agreement gave Plaintiff the option to purchase the rights to sell Leisure Passes in North America (the "Option"). Section 18 provided, in relevant part, that:

> Leisure Group hereby grants North America the option, for the period beginning on October 1, 2011 and anytime thereafter so long as this Agreement remains in effect, to purchase the Product and Rights for utilization in the Expanded Territory . . . .
>
> Such option to purchase shall be deemed exercised immediately upon Leisure Group's receipt of North America's written notice of its intent to exercise the option (hereafter the "Option Notice").  Within a reasonable period of time from the date of Leisure Group's receipt of the Option Notice, but not later than 30 days subsequent thereto, the parties shall schedule a closing at a mutually convenient time, date and place within the United States to consummate North America's purchase of the Product and the Rights for the Expanded Territory. . . .
>
> The documents and instruments delivered at any such closing shall be reasonably acceptable in substance and form to North America's attorneys. . . .

2008 Agreement at 23-25, Mot. to Dismiss App'x A, ECF No. 24-2.  Section 18 does not provide Plaintiff with a right to conduct due diligence before or after exercising the Option.  It also does not provide Plaintiff with the right to purchase the LPOS software.  But the 2008 Agreement does provide that Plaintiff "shall . . . be permitted to continue to utilize the LPOS System for one year" after exercising the Option.  Additionally, Section 18 provides that the purchase price for the "Product" and "Rights" will be "the aggregate sum equal to the product obtained by multiplying .24 by the Average Net Sales (the "Purchase Price").  *Id.* at 24.  Average Net sales is defined as "the quotient obtained by dividing the Net Sales generated during the two previous 12-month periods ending on the date of calculation by two."  *Id.*  The 2008 Agreement further provides that "it shall not be modified in any manner except by an instrument in writing executed by the parties."  *Id.* at 26.

  In July 2011, Smart Destinations, Inc. ("Smart Destinations") filed a patent infringement suit against Plaintiff and Defendant over their use of the LPOS software.  Defendant and Plaintiff discussed the possibility of entering a joint defense agreement ("JDA") for that action, but they never executed a JDA.  Despite the absence of a JDA, Defendant took the lead on negotiating a potential settlement on behalf of itself and Plaintiff.  Defendant requested that Plaintiff refrain from participating in those negotiations.  Because settlement negotiations were still ongoing in October 2011, Plaintiff refrained from exercising its Option at that time.  In November 2011, Mr. Tom Scullin, a member of Plaintiff, emailed Mr. Darren Evans, then CEO of Defendant, requesting that the Purchase Price of the Option be "tolled." Certification of Thomas F.X. Scullin ("Scullin Cert.") Ex. 22, ECF No. 53.  Specifically, Sculling requested that the

Option Purchase Price be calculated as of October 1, 2011, regardless of when Plaintiff exercised the Option (the "Tolling Modification").  *Id.*

On March 1, 2012, the parties met in Hoboken, New Jersey.  Certification of Darran Evans dated June 11, 2013 ("Evans's Cert.") ¶ 16, ECF No. 6-1.  In attendance were Evans, Mr. Rob Foreman on behalf one of Defendant's investors, as well as Scullin and Mr. Francis Tedesco on behalf of Plaintiff.  Evans's Cert. ¶ 17.  At the meeting, Plaintiff again raised the Tolling Modification.  Evans's Cert. ¶ 20.  Plaintiff alleges that the parties verbally agreed to the Tolling Modification.  Defendant denies that it entered into any verbal agreement.  The next day, Scullin sent an e-mail to Evans stating, in relevant part:  "Also, appreciate your confirming the fact that you have agreed to 'toll' the amended and restated agreement with respect to the purchase price and 'average net sales.'"  Scullin Cert. ¶ 54 & Ex. 25.  Evans did not respond to Scullin.  Evans did, however, forward Scullin's email to Forman, who responded:  "Noted – must have been a different meeting he was in."  Evans's Cert. ¶¶ 22-23 & Ex. 4.

Later in March 2012, Defendant reached a confidential settlement agreement with Smart Destinations (the "Settlement").  The Settlement disposed of all the claims pending against both Defendant and Plaintiff.  Plaintiff did not sign the Settlement and never saw a copy of the Settlement.  Shortly thereafter, Plaintiff exercised its Option to purchase the rights to sell Leisure Passes in North America.  Plaintiff's exercise notice stated that the Purchase Price of the Option would be calculated as of October 1, 2011.  Scullin Cert. Ex. 36.  Scullin and Evans subsequently exchanged several emails regarding the Purchase Price.  Scullin insisted that Defendant had agreed to the Tolling Modification, and Evans insisted that Defendant had not.  Evans's Cert. ¶ 24.

Despite their disagreements, the parties began drafting and negotiating closing documents, as required by the terms of the Option.  Evans's Cert. ¶ 26.  Contrary to Plaintiff's requests, Defendant did not disclose the confidential Settlement to Plaintiff after it exercised the Option.  However, in order to close the Option, Defendant agreed to indemnify Plaintiff for any claims made by Smart Destinations regarding Plaintiff's use of the LPOS software.  Defendant also provided expansive representations and warranties assuring Plaintiff that it would have the ability to use the LPOS system for an additional year under the existing LPOS License Agreement, free and clear of any claim by Smart Destinations.  The parties continued to disagree about the alleged tolling modification.

Under the Option, the closing was required to take place within thirty days after Plaintiff delivered its exercise notice – so sometime in April 2012.  2008 Agreement at 24.  The deal did not close, because the parties could not agree on three issues:  (1) disclosure of the Settlement; (2) the Tolling Modification; and (3) the form of the closing documents.  On May 3, 2012, Defendant issued a time-of-the-essence closing letter, setting a closing date for June 4, 2012.  Plaintiff subsequently filed this action to compel Defendant to "specifically perform its obligations" under the 2008 Agreement and close the deal.

3

## II.   DISCUSSION

Plaintiff asserts five causes of action in the Complaint.  In Count 1, entitled "Demand for Specific Performance," Plaintiff demands an injunction requiring Defendant to comply with Section 18 of the 2008 Agreement, generally.  In Count 2, entitled "Breach of Contract as to the 2008 Agreement," Plaintiff takes issue with Defendant's refusal to deliver reasonably acceptable closing documents, refusal to disclose the Settlement, and refusal to honor the alleged tolling agreement.  In Count 3, entitled "Breach of Covenant of Good Faith and Fair Dealing," Plaintiff takes issue with Defendant's unilateral selection of a closing date and with Defendant's refusal to disclose the Settlement.  In Count 4, entitled "Declaratory Judgment with respect to Price Calculation Date," Plaintiff seeks an injunction compelling Defendant to comply with the alleged tolling agreement.  And in Count 5, entitled "Breach of Confidentiality Agreement," Plaintiff alleges that Defendant disclosed its confidential information to Smart Destinations during settlement negotiations.  Defendant's Answer contains a three-count counterclaim seeking damages for breach of contract arising from Plaintiff's refusal to close (Counterclaim Counts 1 and 2) and a declaration that the Option has terminated (Counterclaim Count 3).

The Court previously granted Defendant's motion to dismiss all of Plaintiff's claims seeking disclosure of the Settlement (portions of Counts 1, 2, and 3) and Count 5 regarding the disclosure of confidential information to Smart Destinations.  Plaintiff moves for reconsideration of the Court's decision to grant Defendant's motion to dismiss with respect to the portions of Counts 1, 2, and 3 seeking disclosure of the Settlement.  Defendant separately moves for summary judgment on the remaining claims against it and its counterclaims.

### A.  Motion for Reconsideration

In its previous ruling, the Court found that Plaintiff was not entitled to review the Settlement.  Plaintiff argues that the Court should grant its motion for reconsideration because the Court's ruling contains errors of law and fact.  Specifically, Plaintiff claims that:  (1) the Court incorrectly determined as a matter of law that the covenant of good faith and fair dealing does not create a right of due diligence, (2) the Court failed to consider its argument that it was entitled to reasonably acceptable closing documents, including the Settlement, under Section 18 of the 2008 Agreement, and (3) the Court overlooked several facts – the plain language of the Settlement, that the parties entered into the Option prior to Smart Destination's lawsuit, and that neither Defendant nor Smart Destinations sealed the Settlement.

A motion for reconsideration should not be treated as an appeal of a prior decision.  See Morris v. Siemens Components, Inc., 938 F. Supp. 277, 278 (D.N.J.1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument").  It is

improper for the moving party to "ask the court to rethink what it ha[s] already thought through – rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990). A motion for reconsideration may be granted only if (1) there has been an intervening change in the controlling law; (2) new evidence has become available since the court granted the subject motion; or (3) it is necessary to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café by Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). Manifest injustice pertains to situations where a court overlooks some dispositive factual or legal matter that was presented to it. *See In re Rose*, No. 06–1818, 2007 WL 2533894, at *3 (D.N.J. Aug.30, 2007).

Here, the Court considered the arguments and facts previously raised, and did not make any clear errors. <u>First</u>, the Court explicitly considered and rejected Plaintiff's contention that it has an implied right to conduct due diligence arising from Defendant's duty of good faith and fair dealing. *See Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, No. 12-03375, 2013 WL 4517841, at *3 (D.N.J. Aug. 26, 2013) ("Plaintiff argues that it has an implied right to conduct due diligence arising from Defendant's duty of good faith and fair dealing. Not so. Again, there is no such thing as an implied right of due diligence."). Although Plaintiff may disagree with the Court's legal analysis, a motion for reconsideration is not the proper vehicle for doing so. *See Oritani*, 744 F. Supp. at 1314. <u>Second</u>, the Court acknowledged and rejected Plaintiff's argument that it was entitled to see the Settlement under Section 18 of the 2008 Agreement. *See Leisure Pass*, 2013 WL 4517841, at *3 (finding that "Section 18 makes no mention of due diligence" and holding that "there is no reason that the Court should give either party more than it bargained for."). <u>Third</u>, the Court did not overlook any facts. The Court considered the plain language of the Settlement, finding that "the 2008 Agreement makes clear that Plaintiff does not have the right to acquire the LPOS system, so Plaintiff is not an acquirer under the Settlement." *See id.* And the Court considered the facts relating to the reasonableness of Plaintiff's request to see the Settlement, such as the timing of the Smart Destination's lawsuit and the fact that the Settlement was not sealed. The Court found those facts to be irrelevant. *See id.* ("Plaintiff argues that the Settlement is relevant to the Option, and that it is only reasonable that Plaintiff be allowed to review the Settlement. These arguments miss the point. The question is not whether the Settlement is relevant or whether review of the Settlement is reasonable. The only question is whether the 2008 Agreement gives Plaintiff a right to review the Settlement. The answer is no."). Plaintiff may not use a motion for reconsideration to re-litigate issues that the Court has already decided. Because Plaintiff has failed to present any clear error of law or fact and has not shown that reconsideration is necessary to prevent manifest injustice, the Court will deny its motion.

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

#### i. Plaintiff's Claims

Defendant moves for summary judgment on the remaining claims against it. Because there are genuine issues of material fact regarding Plaintiff's remaining claims, the Court will deny Defendant's motion.

#### 1. The Tolling Modification

Plaintiff alleges that Defendant agreed to the Tolling Modification. Accordingly, Plaintiff maintains that the Option Purchase Price should be calculated as of October 1, 2011 rather than the exercise date. The 2008 Agreement provides that it may only be modified through a writing signed by the parties. A contractual provision providing that any modification must be made in writing "may be expressly or impliedly waived by the clear conduct or agreement of the parties or their duly authorized representatives." *Home Owners Constr. Co. v. Borough of Glen Rock*, 169 A.2d 129, 135 (N.J. 1961). The parties may agree to a modification "through words, creating an express contract, or by conduct, creating a contract implied-in-fact." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (citing Restatement (Second) of Contracts § 19(1) (1981)). But "the intention to modify must be mutual and clear." *Cnty. of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998). Accordingly, where the agreement at issue contains a requirement that

any modifications be made through a signed writing, the party seeking to enforce an alleged oral modification must establish the modification by clear and convincing evidence. *Home Owners*, 169 A.2d at 135.

Here, the evidence presented would not allow a reasonable finder of fact to find that Defendant assented to the Tolling Modification prior to the March 1, 2012 meeting. In fact, the record indicates that Plaintiff was aware that Defendant had not agreed to it. For example, in an email dated November 4, 2011, Scullin wrote the following to Evans:

> On another note, as you know Francis [Tedesco, Plaintiff's principal] called Mitch [Cybulski, the then majority holder in Defendant] several weeks ago and wanted to discuss [the Option], in particular he wanted to request that the provisions contained in Section 18 be 'tolled' pending the outcome of your discussions with Smart Destinations.

Scullin Cert. ¶ 38 & Ex. 20; *see also* ¶ 46 (indicating that, on November 15, 2011, "Cybulski advised that he would get back to [Scullin] on the 'tolling' issue"). A request is not an agreement. Furthermore, Defendant's silence following Scullin's March 2, 2012 e-mail does not, as a matter of law, constitute assent. However, there is a genuine issue of material fact with respect to whether the parties agreed to the Tolling Modification on or after March 1, 2012. Plaintiff has produced evidence demonstrating that Defendant assented to the modification, while Defendant has produced evidence showing that it did not. Based on the evidence produced, a reasonable trier of fact could find by clear and convincing evidence that Defendant assented to the modification.

Furthermore, contrary to Defendant's assertions, there was consideration for the Tolling Modification. Defendant is correct that, to be enforceable, the modification must also be backed by new or additional consideration.[1] *Cnty. of Morris*, 707 A.2d at 967 (citing *Ross v. Orr*, 69 A.2d 730, 732 (N.J. 1949). However, any consideration for a modification, however insignificant, satisfies this requirement. *Oscar v. Simeonidis*, 800 A.2d 271, 276 (N.J. Super. Ct. App. Div. 2002). Here, Plaintiff's decision to continue forgoing settlement discussions with Smart Destinations during the period from March 1, 2012 until the Settlement's execution later that month constitutes consideration. Thus, Defendant's motion for summary judgment on this issue will be denied.

### 2. The Closing Documents

Plaintiff also alleges that Defendant breached the 2008 Agreement by failing to deliver reasonably acceptable closing documents. Section 18 of the 2008 Agreement specifies that the documents delivered at closing must be "reasonably acceptable in form

---

[1] This requirement does not apply to sales transactions. Under the Uniform Commercial Code, as enacted in New Jersey, there is no requirement of new and additional consideration to support the modification of an agreement. N. J. Stat. Ann. § 12A:2-209(1) ("An agreement modifying a contract within this chapter needs no consideration to be binding.").

7

and substance to [Plaintiff's] attorneys."  Here, there are factual disputes as to whether the closing documents provided were acceptable.  For instance, the closing documents contained a Purchase Price calculated based on the exercise date.  Scullin Cert. ¶ 83.  Depending on whether Defendant assented to the Tolling Modification, that Purchase Price may or may not have been reasonable.  Accordingly, the Court will not grant summary judgment to Defendant on this issue.

### ii. Defendant's Counterclaims

The Court will also deny Defendant's motion for summary judgment on its counterclaims.  Defendant argues that the Option should be extinguished due to Plaintiff's failure to close.  Specifically, Defendant claims that when Plaintiff sent the exercise notice, the Option ceased to exist and became a bilateral contract.  Plaintiff then breached that bilateral contract by refusing to close.

Generally, when exercising an option, the option holder "must adhere strictly to the terms of the contract."  *See Seaboard Towers Development Co., LLC v. AC Holding Corp., II*, 2008 WL 2340016 (N.J. Super. Ct. App. Div. June 10, 2008) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 864 A.2d 387, 395 (N.J. 2005)).  "[I]f the option holder does 'not abide by the strict terms governing the exercise of the option' it is subject to suffering 'the consequences of its default.'" *Id.*  Here, Plaintiff's exercise notice provided that the Purchase Price of the Option would be calculated as of October 1, 2011, contrary to the Option's express terms.  Thus, this issue is contingent upon whether Defendant agreed to the Tolling Modification.  If so, then the Plaintiff's exercise notice was consistent with the terms of the modified Option and the Option should not be extinguished.  If not, then Plaintiff's exercise notice did not abide by the strict terms of the Option and the Option is void.

Plaintiff argues that even if the tolling agreement is void, it should be excused from its contractual obligations under the Option because the Smart Destinations lawsuit frustrated the purpose of the Option.  The Court finds that Plaintiff has waived this affirmative defense.  *See JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc.*, 67 A.3d 702, 712 (N.J. Super. Ct. App. Div. 2013) (holding that the defense of frustration of purpose must be raised in a responsive pleading, unless exceptional circumstances excuse that oversight).[2]

---

[2] Moreover, the doctrine of frustration of purpose does not apply to this case.  Under the doctrine of frustration of purpose, "[w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary."  *Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 634 (D.N.J. 1998) (quoting Restatement (Second) of Contracts § 265 (1981)).  Here, the principal purpose of the Option was to purchase the Product and the Rights to use the Product in North America.  The Smart Destination lawsuit, which involves the LPOS system, did not frustrate that principal purpose.

However, there are genuine issues of material fact regarding Plaintiff's other affirmative defense – that Defendant should be equitably estopped from arguing that Plaintiff has defaulted on the Option. "Estoppel is 'an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment.'" *Casamasino v. City of Jersey City*, 730 A.2d 287, 298 (N.J. 1999) (quoting *State v. Kouvatas*, 678 A.2d 1178, 1182 (N.J. Super. Ct. App. Div. 1996). "[O]ne may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." *Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 117 A.2d 585, 590 (N.J. 1955). "The doing or forbearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct." *Id.* at 504. Here, depending on what the parties discussed at the March 1, 2012 meeting, a reasonable fact-finder could determine that Plaintiff reasonably relied on Defendant's silence following Scullin's March 2, 2012 email when it exercised the Option. Accordingly, the Court will deny Defendant's motion for summary judgment on its counterclaims.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration and Defendant's motion for summary judgment are each **DENIED**. An appropriate order follows.

                                           /s/ William J. Martini  
                                      **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 14, 2014**